UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 08-90-GWU

| | |
|---|---|
| WILLIAM R. MORELAND, | PLAINTIFF, |
| VS. **MEMORANDUM OPINION** | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT. |

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

08-90  William R. Moreland

>           Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
>           404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4.        Can the claimant's severe impairment(s) be expected to result
>           in death or last for a continuous period of at least 12 months?
>           If yes, proceed to Step 5.  If no, the claimant is not disabled.
>           See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5.        Does the claimant have any impairment or combination of
>           impairments meeting or equaling in severity an impairment
>           listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
>           Impairments)?  If yes, the claimant is disabled.  If no, proceed
>           to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a),
>           416.920(d), 416.926(a).
>
> 6.        Can the claimant, despite his impairment(s), considering his
>           residual functional capacity and the physical and mental
>           demands of the work he has done in the past, still perform this
>           kind of past relevant work?  If yes, the claimant was not
>           disabled.  If no, proceed to Step 7.  See 20 C.F.R.
>           404.1520(e), 416.920(e).
>
> 7.        Can the claimant, despite his impairment(s), considering his
>           residual functional capacity, age, education, and past work
>           experience, do other work--i.e., any other substantial gainful
>           activity which exists in the national economy?  If yes, the
>           claimant is not disabled.  See 20 C.F.R. 404.1505(a),
>           404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

... 

08-90  William R. Moreland

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

08-90  William R. Moreland

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

08-90  William R. Moreland

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, William R. Moreland, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cervical, thoracic, and lumbar strain, radiculitis, chondromalacia, ankle pain, tendonitis in the shoulder, a pain disorder associated with both psychological factors and a general medical condition, a learning disorder, and a mood disorder. (Tr. 20-1). Nevertheless, based in part on the testimony of Medical Experts (MEs) and a Vocational Expert (VE), the ALJ determined that Mr. Moreland retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 21-6). The Appeals Council declined to review, and this action followed.

At the most recent of several administrative hearings, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "light" level exertion, with the ability to sit six

to seven hours in an eight-hour day (one to two hours without interruption) and stand and walk three hours in an eight-hour day (no more than 30 minutes without interruption), and also had the following restrictions.  (Tr. 586-7).  He: (1) could not crawl; (2) could occasionally stoop and kneel; (3) should not have a job that required climbing stairs; (4) had "slight limitations" in his ability to understand, remember, and carry out simple and detailed instructions and in his ability to make judgments about simple, work-related decisions; (5) had "moderate" limitations in his ability to understand, remember, and carry out detailed instructions, interact appropriately with the public, supervisors, or coworkers and respond appropriately to changes in a routine work setting; and (6) had "marked" limitation in his ability to respond appropriately to work pressures in a usual work setting.  (Tr. 586-7, 590). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in an unspecified "local" and in the national economies. (Tr. 587-9, 591).  He conceded that a marked limitation regarding work pressures could eventually be a problem, but he believed the plaintiff could perform the jobs based on the characteristics presented.  (Tr. 591).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The mental factors accepted by the ALJ were consistent with those given by a consultative psychologist, Mark D. Kroger, who examined the plaintiff on one

occasion (Tr. 409-20), and with one of the MEs, Psychologist Terry R. Schwartz, who testified at the most recent administrative hearing that he agreed with Dr. Kroger's mental residual functional capacity assessment. (Tr. 572-3).

Neither the ALJ or the ME properly dealt with a mental residual functional capacity assessment submitted by Dr. Michael Grogan, one of the plaintiff's treating physicians. Dr. Grogan began treating Mr. Moreland in October, 2005, both for physical pain and for complaints of generalized anxiety disorder, depression, and panic attacks. (Tr. 427). Dr. Grogan initially prescribed the medication Ativan, an anti-anxiety agent, and Wellbutrin, an anti-depressant. (Tr. 428). By the end of 2005, his medications had been changed to Valium and Effexor (Tr. 429), although the Effexor appears to have been discontinued because the physician ran out of samples and Mr. Moreland lacked medical insurance (Tr. 430). Dr. Grogan submitted his mental capacity assessment in September, 2006, noting a variety of diagnoses, including attention deficit disorder, situational stress, and post-traumatic stress disorder with panic attacks. (Tr. 439). He stated that Mr. Moreland had difficulty with concentration and memory, was unable to follow complex instructions, and had difficulty with simple tasks, in addition to having social withdrawal, and difficulty being in public. (Tr. 440). Dr. Grogan opined that the plaintiff would have no useful ability to relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention

and concentration, understand, remember, and carry out complex job instructions, and relate predictably in social situations. (Tr. 439-40). Additionally, he would have a "seriously limited but not precluded ability" in other areas of occupational, performance, and personal-social adjustment. (Id.).

The ME, Dr. Schwartz, was asked if Dr. Grogan's limitations were "too extreme," and responded that "the reason I did not include that is that when I saw who it was filled out by it was my opinion at that time that this person wasn't a psychologist or psychiatrist which is why I did not include it in my report." (Tr. 574). The ALJ asked no follow-up questions. The ALJ stated in her decision that Dr. Grogan's assessment was given no weight because he "practices internal medicine and general practice and has no specific expertise in the area of mental problems." (Tr. 24-5).

Although Dr. Grogan may not have been a mental health specialist, he was a treating source and prescribed medications for anxiety and nervousness. His opinion may not be simply rejected because of lack of specialization.[1] The Commissioner's regulations provide that the ALJ must consider several factors in assessing the weight given to the opinion of the treating physician, including: (1) the length of the treatment relationship and the frequency of examinations; (2) the

---

[1] The ALJ did not allow counsel for the plaintiff to examine Dr. Schwartz regarding his experience or qualifications, a factor which also detracts from confidence in his conclusions.

10

nature and extent of the treatment relationship; (3) the supportability of the opinion with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant. 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6). The ALJ's discussion of Dr. Grogan's opinion clearly falls far short of these requirements. The Sixth Circuit has emphasized that an ALJ's failure to give good reasons for rejecting a treating physician's opinion can be reversible error, even if the decision is otherwise supported by substantial evidence. Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). In the present case, not only was the ALJ's discussion of the treating source's opinion deficient, the ME, Dr. Schwartz, did not provide any rationale for rejecting Dr. Grogan's opinion other than his lack of specialization. Therefore, a remand will be required for further consideration of the plaintiff's mental status.

The parties also extensively dispute the physical restrictions found by the ALJ.

Regarding the plaintiff's physical restrictions, the ALJ accepted the testimony of an ME, Dr. Richard Watson, a specialist in physical medicine and rehabilitation, who testified at the administrative hearings on December 8, 2004 and September 26, 2006. (Tr. 547, 620). Dr. Watson also testified the plaintiff did not meet or

equal any of the Commissioner's Listings of Impairment.  (Tr. 548, 620).  The plaintiff challenges Dr. Watson's conclusions and maintains that it was error for the ALJ to accept his opinion over that of several treating sources, who opined that the plaintiff could not lift more than three to five pounds occasionally or perform full-time standing, walking, or sitting, in addition to having other significant non-exertional restrictions.  The plaintiff recognizes that the opinion of a non-examining expert can be accepted over that of an examining source if the non-examiner has had access to the entire record and clearly explains the reasons for his difference of opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

In the present case, the plaintiff alleged that he was virtually incapacitated physically due to the residuals of a motor vehicle accident in 2001 (e.g., Tr. 526-30), opinions that were supported by testimony by his father and sister (Tr. 541-4, 615-18).  Several of the plaintiff's treating sources placed severe limitations on Mr. Moreland, including an orthopedist, Dr. Michael Grefer, another orthopedist, Dr. Joseph Dobner (Tr. 337), a family physician, Dr. Deepak Mittal (Tr. 344), another family physician, Dr. Brian Schack (Tr. 374), and a third family physician, Dr. Michael J. Grogan (Tr. 422-4).  The opinions of treating physicians are normally entitled to great weight, but they must be supported by sufficient objective evidence if they are to be given controlling weight.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).  Dr. Watson, the ME, testified that the objective studies did not support

08-90  William R. Moreland

the degree of limitation asserted by the treating sources.  For instance, he stated that there were some degenerative changes on MRI studies, such as mild degenerative joint disease of the neck and lower back, early chondromalacia of the right knee with a decreased range of motion, and an MRI of the left shoulder which showed minimal arthritis.  (Tr. 547, 621).

Although the court always views the rejection of treating physician opinions with caution, and particularly so when multiple treating sources are rejected, under the particular circumstances of this case there is substantial evidence to support the ALJ's choice of physical restrictions.  There appears to be no place in the extensive medical records showing more than mild to moderate decreases in range of motion testing, or any significant motor, sensory, or reflex deficits.[2]  (E.g., Tr. 286, 347). MRIs of the left shoulder and cervical spine in February, 2002 showed very little (Tr. 273, 274, 318) and the most recent MRI of the plaintiff's lumbar spine showed degenerative changes and bulges at two levels which touched but did not displace the nerve root (Tr. 433).  Moreover, there were contradictions in the opinions of the treating sources, most notably Dr. Grefer, who commented in May, 2002 that he thought the plaintiff could return to light work, and the next month that he thought the plaintiff could do sedentary to light work with frequent changes of position.  (Tr.

---

[2]There are references to decreased biceps reflexes at several points (e.g., Tr. 268, 340), but Dr. Dobner indicated that the plaintiff's symptoms of right arm problems did not "match his neck situation."  (Tr. 340).

13

269-70). Dr. Grefer also apparently obtained a functional capacity evaluation which concluded that the plaintiff could perform "light duty," and that his level of pain was not explained by objective findings. (Tr. 269). Dr. Dobner also stated that he was at a loss to explain the anatomic/pathological etiology of his symptom complex. (Tr. 286). Dr. Grefer reiterated his opinion that the plaintiff could do light or clerical work on several occasions. (Tr. 275, 355, 393). Dr. Mittal also commented that the plaintiff had chronic pain and pain behaviors with no obvious abnormalities. (Tr. 352).

The plaintiff points to a letter from Dr. Grefer dated December 5, 2005 which attempts to explain his references in dictation to light and sedentary activities as referring to only "the most sedentary activities around his home where he can have frequent rest periods and frequent changes of position." (Tr. 445). This comment is extremely unpersuasive, since in many of the office notes Dr. Grefer was clearly concerned with returning the plaintiff to work (e.g., Tr. 269). In any event, regardless of the physician's possibly flexible definitions of "sedentary" and "light," the underlying issue is the lack of objective evidence to explain the extreme restrictions.[3]

---

[3] The court notes in passing that even if the ALJ and Dr. Watson had initially overlooked this letter, it was subsequently brought to their attention at the last administrative hearing, and Dr. Watson still testified that the evidence was not sufficient to support the restrictions. (Tr. 556-7).

08-90  William R. Moreland

For the reasons stated in the Commissioner's brief, substantial evidence also supports the administrative conclusion that the plaintiff did not meet or equal Listing of Impairment 1.04A.  <u>Commissioner's Motion for Summary Judgment</u>, Docket Entry No. 11, pp. 9-10.

The decision will be remanded for further consideration of the plaintiff's mental status.

This the 18th day of March, 2009.

Signed By:

<u>G. Wix Unthank</u>

United States Senior Judge